UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNIQUEST DELAWARE LLC and
UNILAND HOLDINGS LLC
as Tax Matters Partner,

              Plaintiffs,

      v.

UNITED STATES OF AMERICA,

              Defendant.

_____

**DECISION AND ORDER**

1:15-CV-00638 EAW

## INTRODUCTION

Presently before the Court are the Government's motion for summary judgment (Dkt. 37) and a cross-motion for summary judgment by Plaintiffs Uniquest Delaware LLC and Uniland Holdings LLC ("Plaintiffs") (Dkt. 41). The material facts are largely undisputed. The parties primarily disagree about whether grants valued at $11 million provided to Plaintiffs by the New York State Empire State Development Corporation ("Empire State Corporation") for the restoration of a building in Buffalo, New York, constitute income to Plaintiffs for federal income tax purposes. For the reasons that follow, the Court concludes that the grants are income. As a result, the Court grants the Government's motion for summary judgment (Dkt. 37) in part, denies the motion as moot insofar as it seeks summary judgment on the Government's counterclaim, and denies Plaintiffs' cross-motion for summary judgment (Dkt. 41).

## BACKGROUND

The parties agree on the material facts, and the facts laid out below are taken from the parties' Rule 56 statements. (Dkt. 37-1; Dkt. 41-1; Dkt. 41-2; Dkt. 47-1).

Uniquest Delaware LLC ("Uniquest") is a limited liability company organized under the laws of New York State. (Dkt. 37-1 at ¶ 1; Dkt 41-1 at ¶ 1). Uniquest is treated as a partnership for federal income tax purposes, pursuant to 26 U.S.C. § 761(a). (Dkt. 37-1 at ¶ 2; Dkt. 41-1 at ¶ 2). Uniquest has two members, Uniland Holdings LLC ("Uniland") and UQD Holdings LLC ("UQD Holdings"). (Dkt. 37-1 at ¶ 1; Dkt. 41-1 at ¶ 1). UQD Holdings and Uniland are both owned by two corporations, Univest I Corporation and Univest II Corporation (collectively, the "Univest Corporations"). (Dkt. 41-2 at ¶¶ 1-2; Dkt. 47-1 at ¶¶ 1-2). The Univest Corporations are subject to tax under Subchapter S of the Internal Revenue Code ("IRC"). (Dkt. 41-2 at ¶¶ 1-2; Dkt. 47-1 at ¶¶ 1-2).

In 2006, Uniquest purchased the Avant Building, formerly the Dulski federal office building, in the City of Buffalo. (Dkt. 37-1 at ¶¶ 4-6; Dkt. 41-1 at ¶¶ 4-6). At the time of the purchase, Uniquest was an unincorporated joint venture between Uniland and another limited liability company known as Acquest TP Acquisition, LLC ("Acquest"). (Dkt. 37-1 at ¶ 7; Dkt. 41-1 at ¶ 7). In 2008, Acquest sold its interest in Uniquest to UQD Holdings. (Dkt. 37-1 at ¶ 9; Dkt. 41-1 at ¶ 9). Uniland and UQD Holdings each own a 50% interest in Uniquest. (Dkt. 37-1 at ¶ 10; Dkt. 41-1 at ¶ 10).

When Uniquest purchased the Avant Building, it had been closed due to environmental concerns. (Dkt. 37-1 at ¶ 11; Dkt. 41-1 at ¶ 11). Uniquest expected to receive tax credits under New York State's Brownfield Cleanup Program to help fund the

expected asbestos remediation. (Dkt. 37-1 at ¶ 12; Dkt. 41-1 at ¶ 12). In August 2007, Uniquest received an opinion from its attorney that it was unlikely to be eligible for those tax credits; by that point, Uniquest had already commenced an asbestos remediation project. (Dkt. 37-1 at ¶ 13; Dkt. 41-1 at ¶ 13). Uniquest contacted Empire State Corporation to discuss other possible state funding options. (Dkt. 37-1 at ¶ 14; Dkt. 41-1 at ¶ 14). To obtain funding from the state, Uniquest represented that it planned to develop the Avant Building as "an approximately 150-room full service hotel, 37 condominium residential units, and a 128,000 square ft. Class A office condominium." (Dkt. 37-1 at ¶ 16; Dkt. 41-1 at ¶ 16). Uniquest also represented that the project would result in hundreds of additional jobs related to business activities associated with the Avant Building. (Dkt. 37-1 at ¶ 17; Dkt. 41-1 at ¶ 17). Empire State Corporation in turn provided Uniquest with a draft proposal regarding the Avant Project. (Dkt. 37-1 at ¶ 15; Dkt. 41-1 at ¶ 15).

Empire State Corporation proposed three separate grants, each for specified purposes, with an aggregate grant amount of $7 million. (Dkt. 37-1 at ¶ 18; Dkt. 41-1 at ¶ 18). As described by the proposal, the V784 grant, in the amount of $2,314,000, would be used for "[r]eimbursement for a portion of demolition, construction and building development costs associated with the office component of the project." (Dkt. 37-1 at ¶ 19; Dkt. 37-4 at 5; Dkt. 41-1 at ¶ 19). The V806 grant, in the amount of $1,886,000, would be used for "[r]eimbursement for a portion of the demolition, construction and new building construction costs associated with the hotel and restaurant component of the project." (Dkt. 37-1 at ¶ 19; Dkt. 37-4 at 6; Dkt. 41-1 at ¶ 19). The V785 grant, in an amount of up to $2.8 million, would be used "for a portion of costs associated with the building shell renovation

and interior expansion of the hotel component of the project." (Dkt. 37-1 at ¶ 19; Dkt. 37-4 at 7; Dkt. 41-1 at ¶19). That proposal was later superseded by a revised proposal, which the parties signed in early 2008, but the above-quoted portions remained the same. (Dkt. 37-4 at 5).

The November 12, 2007, version of the proposal contained the following language in its introductory paragraph: "There is no element of compensation of specific, quantifiable or other services to the government agencies involved; the grants contemplated by this offer are being offered solely for the purpose of obtaining an advantage for the general community." (Dkt. 37-1 ¶ 23; Dkt. 41-1 at ¶ 23). That version of the proposal also stated that "[t]he development of [Uniquest's] property includes the construction of residential units, a hotel, parking facilities, offices and retail facilities and are major assets in the [Uniquest] capital structure." (Dkt. 37-1 at ¶ 24; Dkt. 41-1 at ¶ 24).

On November 13, 2007, George LaPoint, an employee of Empire State Corporation,[1] sent another employee an e-mail that said:

> [J]ust a heads-up, if this becomes an issue: The IRC section 118 exclusion for nonshareholders contribution of capital to a corporation, by definition, is applicable only to corporations. If [Uniquest] elects to be taxed as a corporation, the "taxation of grants" issue should not be a problem; if, however, Uniquest is regarded as a partnership, IRC section 118 would not apply.

---

[1]     In the Government's statement of undisputed facts, it refers to George LaPoint as "presumably an employee of Empire State Corporation" (Dkt. 37-1 at 7) and Plaintiffs admit that statement (Dkt. 41-1 at ¶ 7).

(Dkt. 37-1 at ¶ 25; Dkt. 41-1 at ¶ 25).  Within hours, that email was sent to Uniquest.  (Dkt. 37-1 at ¶ 25; Dkt. 41-1 at ¶ 25).

The final version of the proposal does not contain any language regarding the purpose or beneficiary of the Avant Project.  (Dkt. 37-1 at ¶ 29; Dkt. 41-1 at ¶ 29). However, some of the other proposed changes remained.  For example, the December 14, 2007, version of the proposal still provides that "[t]he development of [Uniquest's] property includes the construction of residential units, a hotel, parking facilities, and retail facilities."  (Dkt. 37-1 at ¶ 29; Dkt. 41-1 at ¶ 29).

The proposal provided a schedule for the distribution of the grants, with no portion of the grants to be distributed until the corresponding aspect of the project was substantially completed.  (Dkt. 37-1 at ¶ 30; Dkt. 41-1 at ¶ 30).  Accordingly, none of the grants were paid in 2007 or 2008, as none of the necessary conditions for payment were met during those years.  (Dkt. 37-1 at ¶ 30; Dkt. 41-1 at ¶ 30).

In June 2008, Uniquest began discussions with Empire State Corporation in an effort to obtain additional grants.  (Dkt. 37-1 at ¶ 31; Dkt. 41-1 at ¶ 31).  In January 2009, Uniquest submitted a revised grant proposal to Empire State Corporation.  (Dkt. 37-1 at ¶ 32; Dkt. 41-1 at ¶ 32).  In that proposal, the grants to which Empire State Corporation had previously committed would be increased by a total of $4 million, such that the total amount of the payments would now be $11 million.  (Dkt. 37-1 at ¶ 32; Dkt. 41-1 at ¶ 32). Empire State Corporation agreed to the additional funding, and the total amount of $11 million was paid by the end of the year.  (Dkt. 37-1 at ¶ 33; Dkt. 41-1 at ¶ 33).  Throughout

the remainder of this Decision and Order, the Court will refer to the $11 million payments as the "ESD grants."

Uniquest did not include the ESD grants on its 2009 Form 1065 partnership return as taxable income. (Dkt. 37-1 at ¶ 34; Dkt. 41-1 at ¶ 34). Uniquest took the position that the grants were nontaxable contributions to capital and thus excludible from income. (Dkt. 37-1 at ¶ 34; Dkt. 41-1 at ¶ 34). However, the IRS determined that the ESD grants constituted income to Uniquest. (Dkt. 37-1 at ¶ 38; Dkt. 41-1 at ¶ 38). The IRS also determined that the $11 million in income permitted Uniquest to claim additional depreciation deductions for the 2009, 2010, and 2011 tax years. (Dkt. 37-1 at ¶ 39; Dkt. 41-1 at ¶ 39). Adding $11 million to Uniquest's income (which the taxpayer had reinvested into assets) raised the taxpayer's basis in the Avant Project, thus allowing an increased depreciation deduction based upon the higher basis. (Dkt. 37-1 at ¶ 39; Dkt. 41-1 at ¶ 39).

After the IRS examiner proposed making an $11 million adjustment to Uniquest's taxable income for the 2009 year (reduced by the additional depreciation), Uniquest sought a hearing with the Appeals Branch of the IRS. (Dkt. 37-1 at ¶ 40; Dkt. 41-1 at ¶ 40). The Appeals Branch of the IRS sustained the proposed adjustment to income, such that the final action of the IRS proposed an $11 million increase in Uniquest's taxable income for the 2009 tax year. (Dkt. 37-1 at ¶ 41; Dkt. 41-1 at ¶ 41).

Plaintiffs brought this action seeking judicial review of an IRS Final Partnership Administrative Action pursuant to 26 U.S.C. § 6226. (Dkt. 37-1 at ¶ 44; Dkt. 41-1 at ¶ 44). The Government filed a counterclaim, seeking penalties pursuant to IRC § 6662. (Dkt. 19 at 7-10). On February 28, 2017, the Government filed a motion for summary judgment.

(Dkt. 37).  Plaintiffs filed a cross-motion for summary judgment on March 21, 2017.  (Dkt. 41).  On April 11, 2017, the Government filed its response/reply papers in opposition to Plaintiffs' cross-motion for summary judgment and in support of its motion for summary judgment.  (Dkt. 47).  On April 19, 2017, the Court granted Plaintiffs' motion for leave to file supplemental briefing.  (Dkt. 49; *see* Dkt. 48).  On May 2, 2017, Plaintiffs filed reply papers in support of their cross-motion for summary judgment and in opposition to the Government's motion for summary judgment.  (Dkt. 50).  On July 31, 2017, the Government filed a consent motion to dismiss its counterclaim.  (Dkt. 51).

On December 8, 2017, the Court heard argument on the motions for summary judgment and the motion to voluntarily dismiss.  The parties agreed to the dismissal of the Government's counterclaim, with prejudice, and, thus, the Court granted the Government's motion to voluntarily dismiss its claim for penalties by Text Order on January 3, 2018.  (Dkt. 53).  The Court otherwise reserved decision on the parties' motions for summary judgment.  On February 14, 2018, the Government filed a motion for leave to file a supplemental statement identifying newly decided authority.  (Dkt. 54).  On February 20, 2018, Plaintiffs filed a response to the Government's supplemental statement.  (Dkt. 56).[2]

---

[2]    The Government draws the Court's attention to newly decided authority, *Ginsburg v. United States*, No. 17-75 T, 2018 WL 636658 (Fed. Cl. Jan. 31, 2018), which the Government posits determined whether "a payment received from a state agency that was not in exchange for a partnership interest constituted income to the partnership's members." (Dkt. 54 at 1).  *Ginsburg* concerned tax credit payments to a partnership entity, principally owned by an individual, under a New York State tax credit program. *See* 2018 WL 636658, at *1.  The court held that the approximately $1.8 million tax credit was taxable income because it "was nothing more than a cash transfer from the state to the taxpayer," who was "free to spend, save, or transfer the excess credit in whatever way [it] pleased." *Id.* at *3.  Here, Plaintiffs are partnerships owned by corporate entities, not

# DISCUSSION

## I.    The Competing Motions for Summary Judgment

As noted above, the material facts are undisputed. The parties primarily disagree about whether the ESD grants constitute "income" to Uniquest, and, if they do, whether any income exclusion applies. More specifically, the Government argues that summary judgment is appropriate because the ESD grants constitute "income" as a matter of law pursuant to *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426 (1955) (Dkt. 37-2 at 4-8), and no IRC or common law exclusion from income applies (Dkt. 37-2 at 8-21). In opposition to the Government's motion and in support of their cross-motion, Plaintiffs argue that *Glenshaw Glass* should not be read as broadly as the Government suggests and that the ESD grants should be excluded from Uniquest's federal income tax liability under the "common law inducement doctrine." (Dkt. 42 at 15-24). Plaintiffs also contend that the

---

individuals. (Dkt. 41-2 at ¶¶ 1-2; Dkt. 47-1 at ¶¶ 1-2). In addition, it appears that the ESD grants had at least *some* "strings attached" relating to the use and payment of the grant monies. (*See* Dkt. 37-1 at ¶¶ 19, 30; Dkt. 41-1 at ¶¶ 19, 30); *cf. Ginsburg*, 2018 WL 636658, at *3.

The *Ginsburg* court also addressed the "recovery of capital" doctrine, *see* 2018 WL 636658, at *4, which has little relevance to this case. The court rejected the plaintiffs' theory that the tax credits were a "nontaxable contribution to capital," stating that "[t]here is no evidence, nor is there federal law specifically allowing for such an exclusion, that New York paid $1,864,618 to plaintiffs in exchange for partnership interests." *Id.* This brief explanation is of little persuasive value, and, as will be discussed below, Plaintiffs do not dispute that the ESD grants were not tendered in exchange for a partnership interest. (Dkt. 42 at 42 n.6). Insofar as the *Ginsburg* court also determined that the plaintiffs "freely chose to participate and take advantage of New York's state tax credit program," and that New York State did not induce the plaintiffs to invest, this Court finds that analysis rather cursory. Accordingly, *Ginsburg* is of little significance to this Court's disposition of the present matter.

ESD grants are not income to the Univest Corporations, which are entitled to exclude the grants pursuant to IRC § 118 and § 702. (*Id.* at 24-41).

### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court concludes that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.'" *Rowe v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 265, 266 (W.D.N.Y. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## B.  The ESD Grants Cannot be Excluded from Uniquest's Income

### 1.  Definition of "Income"

The Internal Revenue Code § 1 imposes an income tax on individuals.  26 U.S.C. § 1.  Section 701 of that title provides that "[a] partnership as such shall not be subject to the income tax imposed by this chapter"; rather, "[p]ersons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." *Id.* § 701. With a few exceptions that do not apply here, "[t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual[.]" *Id.* § 703(a).

"'[T]axable income' means gross income minus the deductions allowed by this chapter," *id.* § 63(a), and gross income is "all income from whatever source derived," *id.* § 61(a).  Section 61 provides a list of fifteen examples of income sources, and the statute specifically states that that list is not exhaustive. *Id.*  In *Glenshaw Glass*, the Supreme Court liberally construed the definition of gross income "in recognition of the intention of Congress to tax all gains except those specifically exempted." 348 U.S. at 430.  The Second Circuit held, in *Collins v. Comm'r*, 3 F.3d 625 (2d Cir. 1993), that "the term gross income has been read expansively to include all realized gains and forms of enrichment. . . ." *Id.* at 630 (internal quotation marks omitted); *see also Comm'r v. Kowalski*, 434 U.S. 77, 82 (1977).

Prior to *Glenshaw Glass*, the Supreme Court had interpreted the definition of "income" more narrowly.  In *Eisner v. Macomber*, 252 U.S. 189 (1920), the Court held that the payment of a stock dividend did not constitute "income" within the meaning of the Sixteenth Amendment, and that a statute purporting to tax a stock dividend was

unconstitutional. *Id.* at 219. The Court based that holding on a limited definition of "income" as "the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets. . . ." *Id.* at 207 (internal quotation marks omitted). Later, in *Glenshaw Glass*, the Court retreated from that definition of "income," explaining that "it was not meant to provide a touchstone to all future gross income questions." 348 U.S. at 431. Under *Glenshaw Glass*, where there are "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion," the payments have a "character as taxable income to the recipients." *Id.* The Government argues that *Glenshaw Glass* overruled, *sub silentio*, prior opinions that took a more restrictive view of income. (Dkt. 47 at 17).

According to the Government, *Glenshaw Glass* compels the conclusion that the ESD grants in this case were a "form of enrichment" to Uniquest. (Dkt. 37-2 at 7). Furthermore, the Government contends that the grants were conditioned on completion of the work and the provision of documented employment for a certain number of people; therefore, the grants are income for the additional reason that they are a form of "compensation for services" within the meaning of § 61(a)(1). (*Id.* at 8); *see* 26 U.S.C. § 61(a)(1) (including in gross income "[c]ompensation for services").

At oral argument, Plaintiffs, for the first time, argued that the ESD grants were not an "accession to wealth," but rather a discount or "rebate" on the purchase price of the building. Plaintiffs contend that they would not have proceeded with the Avant Project but for the ESD funding. (*See* Dkt. 41-2 at 6 (referencing statement by President of Upstate

Empire State Development Corporation that "[w]ithout ESD funding, Uniquest would not have proceeded with the project. . . .")).

The IRS has ruled that when retail customers purchase an automobile and receive a rebate, the rebate represents a reduction in the purchase price of the automobile, and the customer's basis is the actual price, after the rebate. Rev. Rul. 76-96, 1976-1 C.B. 23, *suspended in part on other grounds*, Rev. Rul. 2005-28. Plaintiffs contend that this situation is analogous, but the Court disagrees. Here, unlike a retail customer who purchases a car with the knowledge that a rebate is forthcoming, Plaintiffs purchased the Avant Building and then subsequently sought and received the ESD grants. Therefore, the ESD grants cannot be considered a discount or reduction in the purchase price of the building.

Plaintiffs also take issue with the Government's characterization of the holding in *Glenshaw Glass*. Plaintiffs argue that if, as the Government contends, gross income was an "all-encompassing concept," it would not be necessary for the IRC to list 32 items, at § 61(a)(1)-(15) and §§ 71-90, specifically *includable* as gross income. (Dkt. 42 at 43). The Government replies that that interpretation conflicts with the text of § 61, which provides that "gross income means all income from whatever source derived, *including (but not limited to)* the following items," 26 U.S.C. § 61(a) (emphasis added), before listing specific inclusions (Dkt. 47 at 17). The Government is correct that the phrase "including (but not limited to)" signals that the definition of income is <u>not</u> limited by the listed examples. Furthermore, Plaintiffs' argument has been expressly rejected by the Second Circuit. *See Herbert v. United States*, 850 F.2d 32, 34 (2d Cir. 1988) ("The mere fact that Congress

specifically included certain payments as 'income' does not mean that all other payments not specifically included are therefore not 'income.'").

## 2. Section 721 of the IRC Does Not Apply

Next, the Government argues that Uniquest cannot benefit from any IRC section that would permit the exclusion of the ESD grants from its taxable income. (Dkt. 37-2 at 8-12). The Government first argues that Plaintiffs cannot invoke the exclusion for partnership income tax liability found in IRC § 721. (*Id.* at 8-10). The general rule set forth therein provides that "[n]o gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." 26 U.S.C. § 721(a). Here, there is no evidence that the ESD grants were extended "in exchange for an interest in the partnership," *see Mas One Ltd. P'ship v. United States*, 390 F.3d 427, 432 (6th Cir. 2004) (denying the application of § 721 where "no partnership interest was at issue" during the transaction), and Plaintiffs disclaim any reliance upon such an argument, (Dkt. 42 at 42 n.6); *see Twenty Mile Joint Venture, PND, Ltd. v. Comm'r*, 200 F.3d 1268, 1277 n.7 (10th Cir. 1999) (noting that the plaintiff "disclaims reliance on section 721(a) because it is clear that the capital contribution at issue here (assuming arguendo that the disputed sum was a capital contribution) was not made in exchange for a partnership interest"). Accordingly, the Court finds that IRC § 721 does not apply in this case.

## 3. The ESD Grants Are Not "Gifts"

The Government next argues that the ESD grants do not constitute "gifts" pursuant to the exclusion set out in § 102 of the IRC. (Dkt. 37-2 at 10-11). The general rule provides

that "[g]ross income does not include the value of property acquired by gift, bequest, devise, or inheritance." 26 U.S.C. § 102(a). Under the IRC, a gift "proceeds from a detached and disinterested generosity . . . out of affection, respect, admiration, charity or like impulses. And in this regard, the most critical consideration . . . is the transferor's intention." *Comm'r v. Duberstein*, 363 U.S. 278, 285 (1960) (quotation marks and citations omitted). Here, again, there is no evidence that the ESD grants were "gifts" for purposes of federal income tax law, and Plaintiffs disclaim any reliance upon this provision of the IRC. (Dkt. 42 at 42 n.6). Accordingly, the Court also determines that the ESD grants are not excludable from Uniquest's taxable income as "gifts" pursuant to IRC § 102.

### 4. The ESD Grants are Not Excluded under a Common Law Inducement Doctrine

Plaintiffs' primary argument, as set forth in their cross-motion for summary judgment, is that the ESD grants—which Plaintiffs characterize as "incentive grants"—are excludable from income under the "inducement doctrine." (Dkt. 42 at 16). According to Plaintiffs, inducement payments are treated as purchase-price reductions and are excluded from gross income, and the taxpayer must correspondingly reduce its cost basis in the acquired asset. (*Id.*). Plaintiffs argue that, taken together, the cases that they rely on in support of their inducement theory establish three principal requirements for a contribution to constitute an inducement payment: (1) the inducement payment must be intended by both the payor and payee to induce the payee to enter into a specific transaction; (2) the inducement payment must be a necessary condition for the transaction—but for the payment, the transaction would not be completed; and (3) the payor must expect to realize

a benefit from the transaction. (Dkt. 42 at 19). Plaintiffs contend that the ESD grants were inducement payments because the communications between Uniquest and Empire State Corporation establish that both parties intended the grants to induce Uniquest to complete its plans to construct the building; the funding was a necessary condition for the project; and the ESD grants were premised on the benefit that Empire State Corporation expected to receive from completion of the project. (*Id*. at 19-23).

The first case that Plaintiffs cite in support of their position that an inducement doctrine applies in this case is *Brown v. Comm'r*, 10 B.T.A. 1036 (1928). (*Id*. at 16). In *Brown*, the question was whether payments made to the petitioner to induce him to purchase stock constituted "a reduction of the cost of the stock to [the petitioner] or whether it [was] to be treated as taxable income." 10 B.T.A. at 1054. The court concluded that the amount paid was not taxable income because it was "paid in furtherance of an understanding" that the amount "represented a reduction of the investment by [the] petitioner." *Id*. The Government responds that *Brown* cannot survive the Supreme Court's subsequent decision in *Glenshaw Glass*; if the same fact pattern occurred today, the money would be income to the taxpayer. (Dkt. 47 at 20).

Plaintiffs also cite *Freedom Newspapers, Inc., v. Comm'r*, 36 T.C.M. (CCH) 1755 (1977), in which the court, citing *Brown*, concluded that a $100,000 payment by a broker to assist the taxpayer in acquiring four newspapers was not income, but rather was a reduction in the purchase price. As the Government correctly notes, the IRS did not appeal the decision in *Freedom Newspapers*, despite the fact that it had not acquiesced to the *Brown* decision. I.R.S. Action on Decision 1978-62 (Jan. 19, 1978) (declining to

recommend that the IRS appeal despite the "Commissioner's non-acquiescence in [*Brown*]"). The IRS reasoned that the tax court's finding was not "clearly erroneous" because the broker was a party intimately involved in the sale of the newspapers, and therefore any payment received by petitioner was "merely a reduction of his Commission and thus a reduction in petitioner's basis in the [newspaper]." *Id.* at *2. Unlike in *Freedom Newspapers*, here, Empire State Corporation was involved only after the purchase of the Avant Building and there is no contention that it had a financial interest in the project before it awarded Uniquest the ESD grants.

Later, in *General Motors Corp. v. Comm'r*, 112 T.C. 270 (1999), the government agreed that payments made from one member of a consolidated group to another to induce the recipient to purchase manufacturer-subsidized car loans did not constitute income to the recipient. *Id.* at 301 n.30. The Government argues that that case is distinguishable. (Dkt. 47 at 21). In *General Motors Corp.*, the payor, General Motors, and the payee, General Motors' financing arm, were part of the same consolidated taxpayer and filed a consolidated return; thus, there was no accession to wealth. 112 T.C. at 301-04.

The cases Plaintiffs cite in support of their contention that a common law inducement doctrine applies in this case to exempt the ESD grants from Uniquest's income are either factually distinguishable or grounded in an outdated definition of income. As the Government seems to concede, if not for *Glenshaw Glass*, the holding in *Brown* might compel the result that Plaintiffs seek. However, the case law that has followed the Supreme Court's decision in *Glenshaw Glass*, as well as the text of the IRC, overwhelmingly indicate that gross income includes "all realized gains and forms of enrichment . . . except

those specifically exempted," *Collins*, 3 F.3d at 630 (internal quotation marks omitted), and that no common law inducement doctrine survives.

### 5. The ESD Grants are Not Excluded under a Common Law Exclusion for Capital Contributions

Plaintiffs also argue that the ESD grants are excludable under a common law exclusion for capital contributions. (Dkt. 42 at 25-35). Section 118 of the IRC provides that "[i]n the case of a corporation, gross income does not include any contribution to the capital of the taxpayer." 26 U.S.C. § 118(a). According to Plaintiffs, the capital contribution exclusion that predated § 118 was not limited to corporations, and a common law exclusion continues to apply for non-corporations.

In *Edwards v. Cuba Railroad Co.*, 268 U.S. 628 (1925), the Supreme Court held that subsidy payments to a railroad "were not profits or gains from the use or operation of the railroad, and [did] not constitute income within the meaning of the Sixteenth Amendment." *Id*. at 633. Rather, the Court concluded that the Cuban government intended the contribution "to reimburse [the plaintiff] for capital expenditures." *Id*. at 632. Later, in *Brown Shoe Co. v. Comm'r*, 339 U.S. 583 (1950), the Court held that "the payment of cash and the transfer of other property to [a corporation] by certain community groups as an inducement to the location or expansion of [the corporation's] operations in the communities" qualified as a capital contribution. *Id*. at 584-91. The contributor "neither sought nor could have anticipated any direct service or recompense whatever, their only expectation being that such contributions might prove advantageous to the community at large." *Id*. at 591. *Cf. Detroit Edison Co. v. Comm'r*, 319 U.S. 98, 102 (1943) (holding,

with respect to funds paid to utility to extend lines, that "it overtaxes the imagination to regard the farmers and other customers who furnished these funds as makers of either donations or contributions to the Company").

The capital gains exclusion was codified in 1954 as § 118 of the IRC. *See Nathel v. Comm'r*, 615 F.3d 83, 89 (2d Cir. 2010).

> The legislative history of § 118(a) indicates that the purpose of that section was to codify pre-1954 court decisions holding that certain payments to corporations by nonshareholders should be treated as capital contributions and not as income to the corporations, just as shareholder contributions were not treated as income to the corporations.

*Id.* (citing H.R. Rep. No. 83-1337, at 17 (1954)). At oral argument, Plaintiffs contended that, because the common-law exclusion for capital contributions was not explicitly limited to corporations, and because the IRC does not state that the exclusion is prohibited for partnerships, Uniquest can exclude the ESD grants pursuant to that theory. According to Plaintiffs, the legislative history of § 118 indicates that Congress intended to preserve the capital gains exclusion as it existed at common law.

The Government responds that Plaintiffs are attempting to create a common-law doctrine that exempts from income contributions to the capital of a partnership by non-partners where no such exemption exists. (Dkt. 47 at 18-19). The Government contends that the cases on which Plaintiffs rely for their argument involved corporate entities, and the enactment of § 118 codified that case law, creating a rule that capital contributions are not gains to a *corporation. See Edwards*, 268 U.S. at 633 (excluding from income subsidy payments to a corporation); *Brown Shoe Co.*, 339 U.S. at 589 (concluding assets transferred to petitioner corporation by community groups represented contributions to capital). The

Government further argues that the case law that followed the enactment of § 118 likewise pertains only to corporations. *See, e.g.*, *United States v. Chicago, B. & Q. R. Co.*, 412 U.S. 401, 413 (1973) (distilling from previous Supreme Court cases some characteristics of nonshareholder contribution to corporation's capital); *AT&T, Inc. v. United States*, 629 F.3d 505, 518 (5th Cir. 2011) (holding payments to telecommunications corporation to bring service to remote areas were income and not contributions to capital); *United States v. Coastal Utils., Inc.* 483 F. Supp. 2d 1232, 1251 (S.D. Ga. 2007) (same); *Sprint Nextel Corp. & Subsidiaries v. United States*, 779 F. Supp. 2d. 1184, 1193 (D. Kan. 2011) (same).

Indeed, Plaintiffs cite no cases in which a court applied the capital gains exclusion in the context of a partnership. The cases prior to the enactment of § 118 involved corporations, and § 118 specifies that the exclusion applies "in the case of a corporation." 26 U.S.C. § 118(a). Therefore, the Court concludes that Plaintiffs may not exclude the ESD grants from Uniquest's income based on a common-law capital gains exclusion.

### C.   The Univest Corporations May Not Invoke the Exclusion Set Forth in IRC § 118

Finally, the parties quarrel over whether the ESD grants may be excluded under IRC § 118 at the partnership level. Plaintiffs have admitted that Uniquest is treated as a partnership for federal income tax purposes (Dkt. 41-1 at ¶ 2; *see* Dkt. 37-1 at ¶ 2), and, under the IRC, a partnership cannot also be considered a corporation. 26 U.S.C. § 761(a) (providing that a partnership includes various organizations, "which [are] not . . . a corporation or a trust or estate"). Plaintiffs also concede that they do not seek to apply § 118 to exclude partnership income. (Dkt. 42 at 42 n.6). However, Plaintiffs argue that

the Univest Corporations can invoke § 118 at the partner level because the partners are S corporations. (Dkt. 50 at 10). The Government argues that the ESD grants cannot be excluded because Uniquest is a partnership, and income determinations are made only at the partnership level. (Dkt. 37-2 at 11-12). For the following reasons, the Court concludes that IRC § 118 does not apply to Uniquest.

### 1.      The Tax Equity and Fiscal Responsibility Act of 1982

The IRC expressly provides that individual partners, and not the partnership, are the appropriate taxable entities. 26 U.S.C. § 701; *see Monti v. United States*, 223 F.3d 76, 78 (2d Cir. 2000) ("Partnerships are generally not taxable entities."). "While partnerships are not taxed, taxes are imposed on their partners on a pass-through basis." *Callaway v. Comm'r*, 231 F.3d 106, 107 (2d Cir. 2000). "Prior to 1982 adjustments of partnership items were determined at the individual partners' level, resulting in duplication of administrative and judicial resources and inconsistent results between partners." *Randell v. United States*, 64 F.3d 101, 103 (2d Cir. 1995). "In 1982, however, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, 26 U.S.C. §§ 6221-6234 ('TEFRA'), which, among other things, centralizes the treatment of many partnership taxation issues." *Transpac Drilling Venture 1982-12 v. Comm'r*, 147 F.3d 221, 223 (2d Cir. 1998).

> Under TEFRA, a single proceeding determines how partnership items will be reported on all of the partners' individual returns. The partners, moreover, are required to treat partnership items consistently with the items' treatment on the partnership return. Individual taxpayers still pay the relevant taxes, but the determination as to the amount of tax attributable to partnership items is made at the partnership level.

*Madison Recycling Assocs. v. Comm'r*, 295 F.3d 280, 281 n.1 (2d Cir. 2002).

TEFRA requires the differentiation between partnership and nonpartnership items. "'Partnership item[s]' are items more properly determined at the partnership level than at the partner level—e.g., income, gain, loss, deduction, and credit. 'Nonpartnership item[s]' are all of the partnership's remaining income and expenses that are not 'partnership item[s].'" *Chai v. Comm'r*, 851 F.3d 190, 196 (2d Cir. 2017) (citations omitted). "To initiate adjustments to partnership items, TEFRA requires the IRS to conduct a unitary audit of the partnership and issue a final partnership administrative adjustment ("FPAA") to the partners, which the partners may challenge in a single judicial proceeding. . . ." *Id.* "Adjustments to nonpartnership items follow the standard procedures for adjustments to personal income." *Id.* "The goal of TEFRA is to have a single point of adjustment for all partnership items at the partnership level, thereby making any adjustments to a particular partnership item consistent among all the various partners." *JT USA LP v. Comm'r*, 131 T.C. 59, 65 (2008).

### 2.    **TEFRA Applies to Uniquest**

"The TEFRA provisions begin with the presumption that TEFRA applies to any entity that is required to file a partnership return. But there is an exception for small partnerships." *Bedrosian v. Comm'r*, 143 T.C. 83, 104 (2014) (citation omitted). "The term 'partnership' shall not include any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner." 26 U.S.C. § 6231(a)(1)(B)(i). However, "a partnership will not be considered to be a small partnership if any partner during the taxable year is a 'pass-thru partner.'" *Bedrosian*, 143 T.C. at 104. "The term 'pass-thru partner' means a partnership,

estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted." 26 U.S.C. § 6231(a)(9).

Here, Uniquest is a TEFRA partnership because it is owned solely by the Univest Corporations, which are S Corporations. (Dkt. 41-2 at ¶¶ 1-2; Dkt. 47-1 at ¶¶ 1-2); *see* 26 U.S.C. § 6231(a)(9); *Bedrosian*, 143 T.C. at 104; *see also 436. Ltd. v. Comm'r*, 109 T.C.M. (CCH) 1140 (2015) (finding that because the plaintiff "had a single-member LLC as a partner, TEFRA procedures appl[ied]").

### 3. Uniquest Cannot Rely Upon its Corporate Partners to Avoid Tax Computation at the Partnership Level

Plaintiffs' argument mistakes the nature of this proceeding. Plaintiffs have challenged the IRS's adjustment of tax liability against Uniquest—as a partnership entity— as it relates to *partnership items*. (*See* Dkt. 1 at ¶ 1). TEFRA has established a two-tiered approach to the ascertainment of taxable income in the context of an applicable partnership.

> First, the IRS must initiate proceedings at the partnership level to adjust "partnership items," those relevant to the partnership as a whole. It must issue an FPAA notifying the partners of any adjustments to partnership items, and the partners may seek judicial review of those adjustments. Once the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting "computational adjustments" in the tax liability of the individual partners.

*United States v. Woods*, 134 S. Ct. 557, 563 (2013) (citations omitted).

Of course, "the amount of tax owed by each partner continues to depend on calculations at the individual level (*e.g.*, personal exemptions, deductions) and thus varies even among partners with equal distributive shares." *Estate of Newman v. Comm'r*, 934

F.2d 426, 433 (2d Cir. 1991). Nonetheless, "[a] partnership's gross income is calculated at the partnership level and passed through to individual partners. Any question as to whether the partnership has realized income must be resolved at the partnership, rather than the . . . partner, level." *Id.* at 427. Accordingly, "for the limited purpose of calculating the amount of income received by a partnership, the partnership must be regarded as a separate economic entity that earns income and sustains losses as a result of its commercial activities." *Id.* at 433.

Plaintiffs' argument that Uniquest should be absolved of its partnership tax liabilities because its corporate partners may assert income exclusions at the partner level fails as a matter of law. Plaintiffs argue that "[u]nder § 702, partnerships should first be regarded as independent entities for the purpose of ascertaining and reporting income. *Once that income has been reported*, the partnership should be disregarded, and each partner must pay tax only on her portion of the partnership's income." (Dkt. 42 at 37 (citations omitted) (emphasis added)). In this case, Uniquest—the partnership entity— *never* properly reported the $11 million dollars as taxable income on the appropriate IRS Forms. (Dkt. 37-1 at ¶¶ 34-35; Dkt. 41-1 at ¶¶ 34-35). The IRS then commenced adjustment proceedings against Uniquest, resulting in an FPAA that expressly indicates that the IRS decided to make "adjustments to the *partnership items* of the *partnership*." (*See, e.g.*, Dkt. 1-1 at 2; *see also* Dkt. 37-1 at ¶¶ 37-42; Dkt. 41-1 at ¶¶ 37-42).

Plaintiffs provide an extensive examination of IRC § 702 and 26 C.F.R. § 1.702-1, but these laws apply to the income computations for *partners*, not the partnership. *See* 26 U.S.C. § 702 ("Income and credits of partner"); 26 C.F.R. § 1.702-1 (same). Furthermore,

both laws instruct with respect to how a *partner* states his earned income, not a partnership entity such as Uniquest. *See* 26 U.S.C. § 702(a) ("In determining his income tax, *each partner* shall take into account separately his distributive share. . . ." (emphasis added)); 26 C.F.R. § 1.702-1(a) ("*Each partner* is required to take into account separately in his return his distributive share. . . ." (emphasis added)). This analysis is irrelevant to the present action because "[a]ny question as to whether the *partnership* has realized income must be resolved at the partnership, rather than the . . . partner, level." *Estate of Newman*, 934 F.2d at 427 (emphasis added).

> A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

26 U.S.C. § 6226(f); *see also Am. Boat Co., LLC v. United States*, 583 F.3d 471, 478 (7th Cir. 2009) ("A court does not have jurisdiction to consider a partner-level defense in a partnership-level proceeding."). As such, insofar as Plaintiffs argue that the Court should consider whether the ESD grants may be excluded from income at the partner level, their request is prematurely made prior to the conclusion of the partnership-level proceedings. *See GAF Corp. & Subsidiaries v. Comm'r*, 114 T.C. 519, 524 (2000) (stating that the TEFRA "statutory scheme contemplated full resolution of partnership items, at the partnership-level proceeding, *before* there could be any partner-level action"); *see also Stobie Creek Invs., LLC v. United States*, 82 Fed. Cl. 636, 703 (2008) ("[J]urisdiction of this partnership-level proceeding does not extend to issuing binding judgments on the

partner-level defenses for the not-yet-filed partner-level proceedings."), *aff'd*, 608 F.3d 1366 (Fed. Cir. 2010).

Accordingly, Plaintiffs' reliance upon the Univest Corporations' tax liabilities ignores the prerequisite computation of Uniquest's own reportable taxable income. *See generally Woods*, 134 S. Ct. at 563 ("Once the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting 'computational adjustments' in the tax liability of the individual partners."); *Prati v. United States*, 81 Fed. Cl. 422, 429 (2008) ("Upon the conclusion of the partnership level proceedings, within one year, the IRS may assess additional tax liabilities, penalties and interest against individual partners based upon the partnership item adjustments."), *aff'd*, 603 F.3d 1301 (Fed. Cir. 2010). Plaintiffs commenced this action to readjust Uniquest's tax liability regarding "partnership items" as a partnership entity. (*See* Dkt. 1 at ¶ 1). Whether the Univest Corporations are entitled to exclude the ESD Grants from their own individual partner-level tax liabilities is not before the Court.

Plaintiffs' arguments would have this Court resurrect the pre-TEFRA approach. *See Madison Recycling Assocs.*, 295 F.3d at 281 n.1 ("Until the enactment of TEFRA, administrative and judicial proceedings related to partnership income were conducted at the level of the individual partner. If the IRS took issue with the partnership's books or returns, it addressed the matter with each partner individually."). However, Plaintiffs' arguments are contrary to the purpose and objectives of TEFRA. *See JT USA, LP v. Comm'r*, 771 F.3d 654, 657 (9th Cir. 2014) ("These provisions were enacted *inter alia* to prevent the waste of time, effort, and resources occasioned by a multiplicity of

proceedings. . . ."); *Callaway*, 231 F.3d at 107 (stating that the pre-TEFRA approach "resulted in duplication of administrative and judicial resources and sometimes in inconsistent results as between partners").

Therefore, the Court concludes that the ESD grants are income to Uniquest, and that Plaintiffs cannot avoid the necessary partnership determinations of Uniquest's tax liabilities by referring to arguments more appropriately asserted at the partner level.

### D. Plaintiffs' Request for Leave to Amend the Complaint is Denied

Plaintiffs also seek leave to amend their complaint, arguing that the Government has raised a new legal theory permitting them to assert the applicability of IRC § 118. (Dkt. 42 at 12-14). Along with this request, Plaintiffs also assert an alternative theory in support of their cross-motion and in opposition to the Government's motion. (*Id.* at 24-42). Plaintiffs contend that because Uniquest's two partners—the Univest Corporations—are S Corporations, the "contribution to capital" income exclusion provided for in § 118 is applicable to the Univest Corporations, and should be applied to the ESD grants pursuant to § 702 of the IRC. (*Id.* at 25). The Government responds that leave to amend should not be granted because Plaintiffs have not established the necessary "good cause" required under Rule 16 of the Federal Rules of Civil Procedure. (Dkt. 47 at 7-9). The Government also opposes Plaintiffs' arguments on the merits by asserting that Plaintiffs rely on outmoded precedent, and that insofar as an "inducement" doctrine once existed at common law, it has since been codified as § 118—which is inapplicable to Uniquest as a partnership entity. (*Id.* at 16-25). The Government further contends that Plaintiffs' reliance on the

corporate status of its partners in challenging the income taxable at the partnership level is contrary to the procedures set forth in TEFRA and Second Circuit precedent. (*Id.* at 9-16).

Plaintiffs' request to file an amended complaint is denied. Plaintiffs seek to amend their complaint to allege a claim for income exclusion under IRC § 118. (*See* Dkt. 42 at 13). The Government argues, correctly, that because Plaintiffs seek leave to amend after December 11, 2015—the deadline for making amendments to the pleadings as set forth in the Court's scheduling order (Dkt. 18 at ¶ 6)—Plaintiffs must not only satisfy the requirements of Rule 15(a), but must also demonstrate "good cause" for the amendment as required by Rule 16(b). *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see Carnrite v. Granada Hosp. Grp., Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) ("[I]f good cause can be shown, the party must demonstrate that the amendment is proper under Rule 15(a).").

Plaintiffs argue that they have satisfied the "good cause" requirement in Rule 16 because the Government "repeatedly delayed meeting its discovery obligations and has regularly sought extensions of deadlines," causing Plaintiffs' request to be untimely raised at this point in time. (Dkt. 50 at 2). Plaintiffs also argue that they acted diligently by immediately inserting their request to amend within their motion papers once the Government asserted that the Court should consider the ESD grants as income to the partners. (*Id.*). Plaintiffs further contend that the Government would suffer no prejudice because it was on notice that Plaintiffs could raise this argument in the course of this litigation. (Dkt. 42 at 14).

The Court does not agree with Plaintiffs that the Government has raised a new legal theory within its motion papers that would suggest that the Court should consider the ESD grants as income to the partners. The parties' memoranda of law were thoroughly drafted, and the fact that the Government may have anticipated Plaintiffs' future arguments does not suggest that the Government has raised a new theory in this case. Indeed, it appears the Government's attorneys merely possessed the foresight to address Plaintiffs' possible IRC § 118 and "inducement doctrine" arguments after considering Plaintiffs' allegations. (*See* Dkt. 1 at ¶ 49 ("Upon information and belief, the FPAA based this adjustment on the position that no common law Inducement Doctrine applies to the ESD grants, that there is no common law Contribution to Capital Doctrine, and that the Non-shareholder contribution to Capital Doctrine, codified by statute for corporations in 26 U.S.C. § 118, does not apply to entities taxed as partnerships.")).

The Court notes that the Government does, at times, state that the income in question is "income to the partners." (*See, e.g.*, Dkt. 37-2 at 3). That word choice is, perhaps, inapt at this stage of these tax proceedings, but it does not detract from the clear substance of the Government's contentions. The Government consistently argues that Uniquest, as a partnership, cannot avoid its tax liability under the prevailing definition of "income," and cannot avail itself of any income "exclusions" found in the IRC or otherwise asserted by Plaintiffs. (Dkt. 37-2 at 4-21). To this point, the fact that the Government notes that the partners ultimately pay the partnership taxes is a mere statement of law, and it does not mean, as Plaintiffs suggest, that the Government has asserted that the Univest Corporations are the "real parties in interest" to this proceeding. (*Compare* Dkt. 37-2 at 8, *with* Dkt. 42

at 12). Accordingly, the Court does not find that Plaintiffs have established "good cause" to amend their complaint at this late hour and in the midst of competing motions for summary judgment.

However, even if Plaintiffs did satisfy the requisite "good cause" standard under Rule 16, the Court would deny Plaintiffs' request under Rule 15. "Although generally leave to amend is freely granted, where there is no merit to the proposed amendment, leave to amend should be denied." *Ocean Grp. LLC v. Marcal Mfg., LLC*, No. 09 CIV 7679(CM), 2010 WL 4963155, at *5 (S.D.N.Y. Dec. 2, 2010) (citing *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990)). As discussed above, Plaintiffs' request that this Court make a determination with respect to Uniquest's income as a partnership by analyzing whether the income should be excluded at the partner level is without merit. Partnership income is a "partnership item" that is determined within the partnership-level proceeding. *See* 26 C.F.R. § 301.6231(a)(3)-1(a); *Estate of Newman*, 934 F.2d at 427. As such, Plaintiffs' partner-level contentions are not properly before this Court in the resolution of this action. *See, e.g.*, *Stobie Creek Invs., LLC*, 82 Fed. Cl. at 703; *GAF Corp. & Subsidiaries*, 114 T.C. at 524. Whether the IRS will ultimately assess additional tax liability against the Univest Corporations is of no moment to the Court's determination that the ESD grants are income to Uniquest. To be clear, this Decision and Order has no bearing on the possibility that the partners could raise partner-level defenses to challenge any such assessment in future proceedings. *See* 26 U.S.C. § 6230(c)(4); 26 C.F.R. §§ 301.6226(f)-1(a), 301.6221-1(d).

Therefore, Plaintiffs' request for leave to amend the complaint is denied.

## CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment (Dkt. 37) is denied as moot insofar as it sought judgment on its counterclaim but is granted in all other respects, and Plaintiffs' cross-motion for summary judgment (Dkt. 41) is denied. Plaintiffs' request for leave to amend their complaint (*id*. at 12-14) is also denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

DATED:      March 27, 2018
            Buffalo, New York